Gillian L. Wade (SBN  229124)
Sara Avila (SBN 263213)
Marc A. Castaneda (SBN 299001)
**MILSTEIN JACKSON**
**FAIRCHILD & WADE, LLP**
10250 Constellation Blvd., Suite 1400
Los Angeles, CA 90067
Telephone: (310) 396-9600
Facsimile: (310) 396-9635
Email: gwade@mjfwlaw.com
          savila@mjfwlaw.com
          mcastaneda@mjfwlaw.com

Hassan A. Zavareei (SBN 181547)
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
Email: hzavareei@tzlegal.com

Additional Counsel on Signature Page

*Attorneys for Plaintiffs and the Proposed Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMBRIEN SNYDER, on behalf of herself and all others similarly situated,<br><br>*Plaintiff,*<br>v.<br><br>GRUPO AEROMÉXICO S.A.B. DE C.V., and AEROVÍAS DE MÉXICO, S.A. DE C.V., d/b/a AEROMÉXICO,<br><br>*Defendants.* | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Cambrien Snyder ("Mrs. Snyder" or "Plaintiff"), on behalf of herself and all others similarly situated, by and through undersigned counsel, files this Class Action Complaint against Defendants Grupo Aeroméxico S.A.B. de C.V. and Aerovías de México, S.A. de C.V., d/b/a Aeroméxico  (collectively, "Aeromexico" or "Defendants"), and alleges the following:

## INTRODUCTION AND FACTUAL BACKGROUND

1.      Aeromexico is a major international passenger airline and flag carrier of Mexico. Aeromexico typically operates more than 600 daily flights to more than 80 destinations in Mexico, the United States, Canada, Latin America, Europe, and Asia. But this year, Aeromexico has responded to a sudden drop in demand for passenger air travel by canceling scores of scheduled flights.

2.      Under the terms of both Aeromexico's uniform contracts with their customers, when the airline cancels a flight, the airline must either re-accommodate passengers on the next available flight or refund the passengers. Aeromexico has breached their contracts with thousands of paying customers by offering credits for future travel on the airline instead of providing refunds for flights canceled by the airline.

### Declining Demand in Light of Novel
### Coronavirus Severely Impacts Aeromexico's Operation

3.      On December 31, 2019, governmental entities in Wuhan, China confirmed that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness. Days later, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently identified and referred to as the novel coronavirus, or SARS-CoV-2. The illness caused by the virus has been termed COVID-19. By January 21, 2020, officials in the United States were confirming the first known domestic cases of COVID-19.

4.      Due to an influx of thousands of new cases in China, on January 30, 2020,

the World Health Organization officially declared COVID-19 as a "public health emergency of international concern."

5.      On March 11, 2020, the World Health Organization declared COVID-19 a pandemic.

6.      In efforts to curb the spread of the virus, federal, state and local governments have implemented temporary travel restrictions and guidelines advising against essential travel. In the United States, the federal government has limited travel from China, Europe, and the United Kingdom, permitting only the return of U.S. citizens and permanent residents. The Department of State also advised on March 19, 2020, that U.S. citizens should temporarily avoid all international travel—including to Mexico, one of the most popular international destinations for American tourists—with the exception that U.S. residents abroad should arrange for immediate return to the United States where possible.

7.      State and local governments have also restricted local travel. On March 16, 2020, seven counties in the San Francisco, California area announced shelter-in-place orders to reduce local traffic to activities necessary to perform "essential" activities. Other states, counties, and municipalities have since implemented similar shelter-in-place orders, and as of the drafting of this Class Action Complaint, at least 316 million people in at least 42 states, three counties, nine cities, the District of Columbia, and Puerto Rico are living under such orders or advisories.

8.      In addition to health and safety concerns, people across the country are facing increasing economic stress due to the novel coronavirus, including unemployment levels not seen since the Great Depression.

9.      As the travel limitations, virus fears, and economic uncertainties mounted, consumer demand for air travel, particularly leisure and non-essential business travel, quickly declined. In response to this declining demand, Aeromexico has canceled many flights to avoid flying planes with too many empty seats to be profitable.

10.      The main way that airlines like Aeromexico determine operational capacity

(*i.e.*, how many flights it markets and flies) is by looking at passenger "load factors" on each route. Load factors measure the percentage of seats filled by paying passengers on an aircraft (or a set of aircraft) scheduled to depart. Load factors can be determined for an overall schedule (all flights to all destinations), for particular routes (all flights between two airports), or for particular flight service (a specific scheduled flight with its own flight number). If load factors fall too low, airlines will determine that operating flight service as scheduled would not be profitable (or otherwise economically desirable) and will then typically modify the schedule—including by canceling previously scheduled flights.

11.     Aeromexico's overall load factor is typically around 81 to 82%. But declining demand related to COVID-19 has brought the airline's load factors down significantly, and Aeromexico has canceled thousands of flights in response.

12.     In March 2020, Aeromexico's load factor fell to 64.8%—18.6 percentage points down from March 2019.[1] The airline transported 51.4% fewer passengers on international flights in March 2020 than it did in March 2019.

13.     In response to the rapidly declining demand for passenger air travel, Aeromexico announced to its crewmembers on March 19, 2020, that it would cut 50% of its international flights.[2] A week later, Aeromexico announced to its crewmembers that it would ground at least half of its fleet of 125 aircraft in April due to reduced demand for flights.[3]

14.     Defendants need to carefully plan flight routes and schedules to ensure that

---

[1] Grupo Aeromexico, *Aeromexico Reports March 2020 Traffic Results* (last visited April 16, 2020), https://aeromexico.com/cms/sites/default/files/March_2020_Op_Stat.pdf.
[2] *Aeromexico to slash flights over coronavirus shock: memo*, REUTERS (March 19, 2020), https://www.reuters.com/article/us-healthcare-coronavirus-aeromexico-idUSKBN21706W.
[3] *Aeromexico to ground half of its fleet by April because of coronavirus: internal memo*, REUTERS (March 25, 2020), https://www.reuters.com/article/health-coronavirus-mexico-aeromexico-idUSL1N2BI31J.

aircraft are available for scheduled departures from various airports within the airline's network. Large scale cancellations, such as those made by Aeromexico in light of declining demand related to COVID-19, must therefore be carefully planned well in advance of the scheduled flights.

15.     Despite their self-imposed obligations to notify passengers of cancellations and other flight schedule changes within 30 minutes of becoming aware of such changes,[4] Aeromexico has been withholding cancellation notifications from customers for weeks after canceling the customers' flights. Aeromexico is often waiting until the day before, or even the day of, a canceled flight to notify customers that the airline has canceled the flight.

**Aeromexico Offers Customers Credit Where Refunds Are Due**

16.     When Aeromexico cancels a flight, their contracts with their passengers require the airline to either (1) rebook passengers on the next available flight to their destination; or (2) provide a full refund. The contract terms governing cancellations by the airline do not give Aeromexico the option of providing customers with a "credit" for future travel on the airline instead of a refund.

17.     Nevertheless, after canceling at least 50% of their scheduled flights, Aeromexico has offered many of their canceled passengers only two options: (1) rebook your flight to a route that the airline has not canceled, or (2) obtain travel credit.

18.     Instead of following the terms of its contracts, Aeromexico is unilaterally pushing credits or vouchers on customers, making it impossible for many customers to request refunds, and denying refunds when legitimate requests are made.

19.     While Aeromexico is focused on taking any and all self-help measures they can to preserve their own cashflow, customers who are owed refunds after the airline failed to transport them to their destinations are suffering financially.

20.     Aeromexico is placing their concern for their own financial stability ahead

---

[4] *See* Aeromexico, Customer Service Plan, § B (last updated August 18, 2011), https://aeromexico.com/en-us/legal-information.

of the significant economic impacts its consumers are facing in this unprecedented economic downturn. In just over one month, over 22 million people have applied for unemployment benefits in the United States, and the U.S. unemployment rate has climbed to over 20%—the worst it has been since the Great Depression. As many as one-third of the 40 million renters in the U.S. are unable to make their rent, and millions of people with home mortgages will likely face foreclosure. Now more than ever, customers whose flights or reservations have been canceled by Aeromexico need the prompt refunds to which they are entitled.

21.     Since March 2020, Aeromexico has made updates to their website to alert customers of their options to cancel and rebook their flights (*i.e.*, highlighting the policies for cancellations by the customer and directing customers to streamlined procedures to make such cancellations). But, despite the thousands of flights canceled *by the airline*, Aeromexico failed to include in these website updates clear statements of the policies and procedures for cases where the airline has canceled a customer's flight. Aeromexico has similarly failed to highlight and provide ample resources to allow canceled passengers to request or obtain the refunds they are owed under the contracts. And, when customers finally reach a webpage or customer service representative regarding their options, they are met with Aeromexico's misinformation about the refunds to which the customers are entitled.

22.     In addition, even though Aeromexico knows which flights they have canceled days or weeks in advance of scheduled departures—Aeromexico has failed to send prompt cancellation notifications to customers with reservations on the canceled flights.

23.     As numerous customers complained about Aeromexico and other airlines' recent practice of refusing to refund consumers for flights canceled by the airlines, the DOT issued an Enforcement Notice Regarding Refunds by Carriers Given the Unprecedented Impact of the COVID-19 Public Health Emergency on Air Travel ("DOT Notice"). The DOT Notice provides that the airlines must refund tickets if they

cancel flights due to the novel coronavirus:

> The U.S. Department of Transportation's Office of Aviation Enforcement and Proceedings (Aviation Enforcement Office), a unit within the Office of the General Counsel, is issuing this notice to remind the traveling public, and U.S. and foreign carriers, operating at least one aircraft having a seating capacity of 30 or more seats, that passengers should be ***refunded promptly*** when their scheduled flights are cancelled or significantly delayed. Airlines have long provided such refunds, including during periods when air travel has been disrupted on a large scale, such as the aftermath of the September 11, 2001 attacks, Hurricane Katrina, and presidentially declared natural disasters. Although the COVID-19 public health emergency has had an unprecedented impact on air travel, ***the airlines' obligation to refund passengers for cancelled or significantly delayed flights remains unchanged.***

The Department is receiving an increasing number of complaints and inquiries from ticketed passengers, including many with non-refundable tickets, who describe having been denied refunds for flights that were cancelled or significantly delayed. In many of these cases, the passengers stated that the carrier informed them that they would receive vouchers or credits for future travel. But many airlines are dramatically reducing their travel schedules in the wake of the COVID-19 public health emergency. As a result, passengers are left with cancelled or significantly delayed flights and vouchers and credits for future travel that are not readily usable.

Carriers have a longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier. The longstanding obligation of carriers to provide refunds for flights that carriers cancel or significantly delay does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions). The focus is not on whether the flight disruptions are within or outside the carrier's control, but rather on the fact that the cancellation is through no fault of the passenger. Accordingly, the Department continues to view any contract of carriage provision or airline policy that purports to deny refunds to passengers when the carrier cancels a flight, makes a significant schedule change, or significantly delays a flight to be a violation of the

carriers' obligation that could subject the carrier to an enforcement action.[5]

(emphasis added).

24. Thus, Aeromexico's failure to provide prompt refunds for canceled flights violates not only their own contracts, but also federal law.

**PARTIES, JURISDICTION, AND VENUE**

25. Plaintiff Cambrien Snyder is a California Citizen who resides in Los Angeles County, California.

26. Defendant Aerovías de México, S.A. de C.V., d/b/a Aeroméxico, is a Mexican corporation with its principal place of business located at Paseo de la Reforma 243, Mexico City, Mexico.

27. Defendant Grupo Aeromexico, S.A.B. de C.V. is a Mexican corporation with its principal place of business located at Paseo de la Reforma 243, Mexico City, Mexico. Grupo Aeromexico, S.A.B. de C.V. is a holding company. Aerovías de México, S.A. de C.V., is its principal wholly owned mainline operating subsidiary. Defendant Grupo Aeromexico, S.A.B. de C.V.'s United States headquarters are located at 3663 North Sam Houston Parkway East, Suite 500, Houston, Texas 77032.

28. Defendants Aerovías de México, S.A. de C.V., and Grupo Aeromexico, S.A.B. de C.V., are collectively called "Aeromexico."

29. Aeromexico operates six daily round-trip flights between LAX and Mexico City, as well as a number of other flights from LAX to other destinations, including flights to Guadalajara, Cancun, and Monterrey.

30. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The amount in controversy

---

[5] U.S. Dep't of Transportation, Enforcement Notice Regarding Refunds by Carriers given the Unprecedented Impact of the COVID-19 Public Health Emergency on Air Travel (Apr. 3, 2020), https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final%20April%203%202020_0.pdf.

exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than 100 putative class members, and minimal diversity exists because many putative class members are citizens of a different state than Defendants.

31.     Jurisdiction is also proper under Article 33 of the Convention for the Unification of Certain Rules for International Carriage by Air (Montreal Convention). Defendants have a place of business in the United States through which the contract was made. In addition, the place of destination of Plaintiff's round-trip air travel ticket is in the United States, and specifically in this District.

32.     Venue is proper in this Court pursuant to 28 U.S.C. §1391, because this is the judicial district in which a substantial part of the events giving rise to the claims asserted herein occurred. Aeromexico, at all relevant times, maintained offices and engaged in significant business operations in this District.

### **GENERAL ALLEGATIONS**
**Aeromexico's Contract**

33.     Aeromexico's Contract of Carriage applies to all tickets for flights operated by Aeromexico, as well as to all flights marketed by Aeromexico and operated by codeshare partners. Additionally, Aeromexicos's Customer Service Plan applies "to all international itineraries, for flights to and from the United States." ***See* Exhibit A, Aeromexico Contract of Carriage, including Customer Service Plan ("Aeromexico Contract").**

34.     The Aeromexico Contract provides: "The Carrier may cancel the route without prior notice, being bound to protect the passenger in the services of other airlines if possible or to reimburse the fare in the corresponding segment not being used, in terms of article 52 of the Law of Civil Aviation, and subject to the procedures established by the Carriers regarding involuntary changes and reimbursements." Ex. A,

1    Contract of Carriage § 5.3.[6]

2        35.    In addition, the Customer Service Plan component of the Aeromexico

3    Contract provides that Aeromexico's "Refund Department will process an eligible

4    refund to the original form of payment within 7 days (credit/debit cards) or within 20

5    days (all other) from the date we receive your request." Ex. A, Customer Service Plan §

6    E.

7        36.    Despite the clear terms of the Aeromexico Contract, Aeromexico has

8    failed to provide customers with refunds for flights that the airline canceled and has

9    instead attempted to force customers to accept credits instead of refunds, going so far

10   as to deny explicit refund requests.

11   **Aeromexico Fails to Refund Mrs. Snyder after Canceling Her Flight**

12       37.    On or about February 1, 2020, Plaintiff and her husband purchased

13   round-trip tickets from Aeromexico for themselves and their three children for travel

14   from Los Angeles, California, to Puerto Vallarta, Mexico, on April 4, 2020, and from

15   Puerto Vallarta to Los Angeles on April 9, 2020. For each ticket, Plaintiff paid a cash

16   fare of $859.84, including taxes and fees, using a credit card.

17       38.    Plaintiff made the purchase through Aeromexico's United States website.

18       39.    On the morning of April 3, 2020, one day before her family's outbound

19   flight to Puerto Vallarta was scheduled to take off, Plaintiff received an email from

20   Aeromexico informing her that her April 4 flight to Puerto Vallarta had been canceled.

21   In this cancellation email, Aeromexico did not offer to rebook Plaintiff on the next

22   available flight. Nor did Aeromexico offer Plaintiff a refund of the fare she paid for the

23   flight or give Plaintiff the option of requesting a refund. Instead, Aeromexico's

24   cancellation email only offered a credit for future travel.

---

[6] Article 52 of the Mexico's Civil Aviation Law, which is incorporated into the
Aeromexico Contract, was amended in 2017 and no longer applies to flight
cancellations attributable to airlines. *See* Ley de Aviación Civil (Civil Aviation Law)
[LAC] art. 52, Diario Oficial de la Federación [DOF] 12-05-1995, última reforma
DOF 18-06-2018 (Mex.).

40. Plaintiff then called the Customer Service number provided by Aeromexico to inquire about the status of her flight and, assuming it was canceled, to request a refund.

41. On the call with Aeromexico Customer Service, Plaintiff requested a refund. The airline's Customer Service department denied Plaintiff's request, stating that Aeromexico could only offer a heavily restricted "voucher," good for one year from the date of issue, or an "open ticket" (credit) equal in value for the roundtrip ticket purchased, valid for travel through February 28, 2021.

42. In sum, despite the fact that Plaintiff could not take the flight she booked because Aeromexico canceled it, Aeromexico failed to provide a refund to Plaintiff and, instead, only offered Plaintiff a credit for use on a future flight.

## CLASS ACTION ALLEGATIONS

43. Pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2) and (b)(3), as applicable, Plaintiff seeks certification of the following nationwide Class:

> All persons in the United States who purchased tickets for travel on an Aeromexico, Aeromexico Connect, or Aeromexico Contigo flight scheduled to operate from March 1, 2020 through the date of a class certification order, whose flight(s) were canceled by the airline, and who were not provided a refund. ("Class" or "Proposed Class").

44. Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff, and any Judge sitting in the presiding court system who may hear an appeal of any judgment entered. Also excluded from the Class is any person who was reaccommodated and transported to their ticketed destination by Defendants or their

agents on the next available flight and within a reasonable time of the original ticketed departure time.

45.     Plaintiff reserves the right to amend or modify the Class definition with greater specificity or division after having had an opportunity to conduct discovery.

46.     The Proposed Class meets the criteria for certification under Rule 23(a), (b)(1), (b)(2), (b)(3) and (c)(4).

47.     **Risk of Inconsistent or Varying Adjudications. Fed. R. Civ. P. 23(b)(1).** As the proposed class members include thousands of persons across all 50 states, there is significant risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the Defendants. For example, declaratory relief may be entered in multiple cases, but the ordered relief may vary, causing Defendants to have to choose the court order with which they will comply.

48.     **Numerosity. Fed. R. Civ. P. 23(a)(1).** Consistent with Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of class members is unknown to Plaintiff at this time, it is believed that the Class is comprised of tens of thousands if not hundreds of thousands of members geographically dispersed throughout the United States. Affected consumer's names and addresses are available from Defendants' records, and class members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include electronic mail, U.S. Mail, internet notice, and/or published notice.

49.     **Predominance of Common Issues. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Consistent with Rule 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual class members. The common questions include:

a.     Whether Aeromexico's conduct breaches their Contract of Carriage;

b.     Whether Defendants are required to give a refund, rather than credit on a future flight when they cancel a flight and cannot reaccommodate the passengers within a reasonable time of the original flight schedule;

c.     Whether Plaintiff and members of the Class are entitled to damages, costs, or attorneys' fees from Defendants;

d.     Whether Plaintiff and members of the Class are entitled to compensatory damages.

50.     **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of other Class members' claims because Plaintiff and members of the Class were subjected to the same unlawful conduct and damaged in the same way. Defendants' conduct that gave rise to the claims of Plaintiff and other Class members (*i.e.*, canceling flights without giving refunds in breach of Aeromexico's uniform Contracts of Carriage) is the same for all members of the Class.

51.     **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against Defendants to obtain relief for the Class. Plaintiff has no conflicts of interest with the Class. Plaintiff's counsel are competent and experienced in litigating class actions, including extensive experience in litigating consumer claims. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the interests of the Class.

52.     **Superiority. Fed. R. Civ. P. 23(b)(3).** Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs and class members may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and the Class members are relatively small compared to the burden and expense required to individually litigate their claims against Defendants, and thus,

individual litigation to redress Defendants' wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system. Moreover, individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

53.    **Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). Defendants, through their uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole. Moreover, Defendants continue to offer credits instead of refunds to Plaintiff and Class members for flights that they cancel, thus making declaratory relief a live issue and appropriate to Class as a whole.

**<u>COUNT I - BREACH OF CONTRACT</u>**
**(brought by Plaintiff on behalf of herself and the Proposed Class)**

54.    Plaintiff realleges and reincorporates the allegations in paragraphs 1 through 53 above as if fully set forth herein.

55.    This claim for breach of contract damages or, in the alternative, specific performance of the contract's refund terms, is based on Aeromexico's breaches of their uniform Contract of Carriage, including their Customer Service Plan applicable to flights to or from the United States ("Aeromexico Contract").

56.    Plaintiff, along with all putative class members, entered into an Aeromexico Contract with Aeromexico for the provision of air travel in exchange for payment. The Aeromexico Contract was drafted by Aeromexico.

57.    Plaintiff, and all putative members of the Class performed under the Aeromexico Contract, specifically, by tendering payment for tickets on Aeromexico flights or on flights marketed by Aeromexico and operated by its codeshare partners,

and by complying with all conditions precedent under the Contract.

58.     Due to Aeromexico's cancellation of their flights, Plaintiff, and all putative class members cannot use their airline tickets through no fault of their own and they are not getting the benefit of their bargain with Aeromexico.

59.     Under the terms of the Contract of Carriage drafted by Aeromexico, Plaintiff and putative class members are entitled to refunds because Aeromexico canceled their flights and did not reaccommodate the customers on the next available flight. Ex. A, § 5.3. By failing to provide refunds, Aeromexico has breached their Contract of Carriage.

60.     Aeromexico has further breached the Aeromexico Contracts by attempting to force passengers into accepting travel credits rather than promptly providing refunds for canceled tickets to the original form of payment. Ex. A, Customer Service Plan § E.

61.     As a result of Aeromexico's breaches of contract, Plaintiff and the putative class members have incurred damages in an amount to be proven at trial.

### COUNT II - BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
**(brought by Plaintiff on behalf of herself and the Proposed Class )**

62.     Plaintiff realleges and reincorporates the allegations in paragraphs 1 through 61 above as if fully set forth herein.

63.     The Aeromexico Contract is subject to an implied covenant of good faith and fair dealing, which is implied in all contracts unless the parties contract out of the implied covenant by agreeing to other terms that disclaim, waive, or override the covenant. The parties to the Aeromexico Contract had the ability to disclaim, waive, or override the covenant in the contract, but they did not do so. The parties thus voluntarily entered into the Aeromexico Contract, including its implied covenant of good faith and fair dealing.

64.     Plaintiff and members of the Class have performed all conditions,

covenants, and promises required to be performed on their part in accordance with the terms and conditions of the Aeromexico Contract.

65.     Under the implied covenant, Aeromexico was obligated to act fairly and in good faith to perform the terms of the Aeromexico Contract, including the terms requiring them to refund passengers whose flights were canceled by the airline and who were not reaccommodated by the airline on the next available flight. Aeromexico was also obligated to interact with canceled passengers in accord with the covenant of good faith and fair dealing, meaning Aeromexico would not do anything to unfairly interfere with the rights of Plaintiff and the Class to receive the benefits of the contract.

66.     Aeromexico's acts described in this Complaint reflect a failure by Aeromexico to perform the promises required by the Aeromexico Contract in accord with the covenant of good faith and fair dealing. Although Aeromexico has canceled thousands of flights, they have failed to provide the cooperation necessary to allow Plaintiff and members of the Class to perform under the contract's flight cancellation and refund provisions, which provide that Plaintiff and the Class are entitled to refunds if they were not rebooked (to their satisfaction) on the next available flight. Instead, Aeromexico has provided Plaintiff and Class members with unfair and inaccurate information regarding their refund options under the Aeromexico Contract, including by withholding information from class members about known flight cancellations and by insisting that canceled customers are only entitled to vouchers or credits, not refunds.

67.     In failing to perform under their contracts fairly or in good faith, Aeromexico has breached the covenant of good faith and fair dealing.  As a result of Aeromexico's failures to deal fairly or in good faith, Plaintiff and the putative class members have incurred damages in an amount to be proven at trial.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of all putative Class members, respectfully requests that the Court enter judgment in their favor and against Defendant as follows:

A.  For an Order determining at the earliest possible time that this matter may proceed as a class action under Rule 23 and certifying this case as such;

B.  For herself and each Class member their actual compensatory damages, or in the alternative, for specific performance of the refund provisions of the Contract of Carriage;

C.  For reasonable attorneys' fees and costs of suit;

D.  For pre-judgment interest; and

E.  Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff, on behalf of herself and the Class of all others similarly situated, hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: April 20, 2020                    Respectfully submitted,

_Gillian L. Wade_

Gillian L. Wade (SBN 229124)
Sara Avila (SBN 263213)
Marc A. Castaneda (SBN 299001)
**MILSTEIN JACKSON FAIRCHILD & WADE, LLP**
10250 Constellation Blvd., Suite 1400
Los Angeles, CA 90067
Telephone: (310) 396-9600
Facsimile: (310) 396-9635
Email:      gwade@mjfwlaw.com
            savila@mjfwlaw.com
            mcastaneda@mjfwlaw.com

Hassan A. Zavareei (SBN 181547)
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
Email: hzavareei@tzlegal.com

V Chai Oliver Prentice (SBN 309807)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1000
Oakland, CA 94612
Telephone: (510) 250-3316
Facsimile: (202) 973-0950
Email: vprentice@tzlegal.com

Jeff Ostrow*
Jonathan M. Streisfeld*
Joshua R. Levine*
Daniel Tropin*
**KOPELOWITZ OSTROW
FERGUSON WEISELBERG
GILBERT**
1 West Las Olas Blvd. Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
Email:streisfeld@kolawyers.com
        ostrow@kolawyers.com
        levine@kolawyers.com

Melissa S. Weiner*
**PEARSON, SIMON &
WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
Email:mweiner@pswlaw.com

Daniel L. Warshaw (SBN 185356)
**PEARSON, SIMON &
WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

*pro hac vice* application forthcoming

*Counsel for Plaintiff and the Proposed Class*